DOWLUT *v.* STATE OF INDIANA.

[No. 30,740. Filed April 1, 1968.]

*Ralph W. Probst,* and *Probst & Probst,* of Kendallville, for appellant.

*John J. Dillon,* Attorney General, and *Murray West,* Deputy Attorney General, for appellee.

JACKSON, J.—This is an appeal from a conviction of murder in the second degree.

The record in this case is so voluminous, consisting of two volumes of transcript and eight briefs, that only the bare essentials necessary for consideration in this appeal can be touched upon.

Appellant, who at the time was seventeen years of age, was arrested on April 15, 1963 at the home of his parents in South Bend, Indiana. The arrest was made about 10:30 at night, without warrant, by two uniformed policemen who immediately took appellant to the police station. Appellant was interrogated by the officers concerning the murder of Anna Marie Yocum. He was not advised of his constitutional rights, was refused the right to call an attorney or consult with his father, was told to "lift his hand" and was given a paraffin test. The interrogation continued until 2:30 the morning of April 16, 1963, when he was taken to the desk and booked. He was also required to empty his pockets and was searched. He was then placed in a cell and held there until Tuesday morning, April 16, 1963, then taken to an interrogation room and questioned until about 10:00 when the police took him and two other boys to a room at Memorial Hospital where a man was lying in bed. One of the police officers asked the man in bed if he recognized any of them. Appellant was then taken back to the police station where the interrogation continued until about midnight on the 16th. He was then taken back to the lockup where he had been the night before. All during this time the only thing the police talked to him about was murder. On Wednesday, April 17, 1963, about 8:00 o'clock he was taken from the lockup to the interrogation room where he was again continually questioned about the murder of Anna Marie Yocum. During the interrogation that afternoon he was told his Dad's gun was used in the shooting and unless he confessed his Dad would go to prison or even the electric chair for something he didn't do. Appellant was scared and asked the police what they wanted.

They said to write something. He wrote a note to his father dictated by the police. All he remembered of it was "I confess my crime". The police told him to write a note to Cammy Swift. They dictated the note or letter and kept it. On Wednesday the police interrogated him about the gun. Finally, one of the police officers grabbed him by the shirt, called him a s.o.b. and said he wanted to know where the damn gun was. Appellant then told them. The officers took him in a squad car to the cemetery, arriving about 6:00 p.m. where appellant dug up the gun. They took pictures of him digging for the gun and then had him hold it. They then took more pictures and took him back to the police station. On the return to the police station the interrogation continued. His father came about 7:00 p.m. Both were crying. Appellant told his father in Polish that he confessed and it wasn't true. The police wanted appellant to sign a typewritten statement, but he refused. About 10:00 o'clock that night they put him back in his cell.

About 7:00 a.m. on Thursday, April 18, 1963, appellant got up and was served breakfast. About 8:00 a.m. he was taken to an interrogation room where the police again attempted to get him to sign a typewritten statement. Appellant refused. About 9:30 officer Hampton and attorney William Plowdowski walked in. The attorney asked Hampton not to talk to appellant any more and asked when appellant would be arraigned. Hampton said maybe tomorrow, and the attorney asked the officer not to bring appellant into court without notifying him first. Hampton assured the attorney no more police officers would talk to appellant and he would be notified when appellant would be brought into court. Appellant talked to his attorney about fifteen minutes, and the attorney then left. Then a police officer, not in uniform, came in and for about an hour tried to get appellant to sign a statement. At about 11:00 he was taken to city court. Appellant asked the police officer if his attorney had been notified, and he said they were not required to run errands for lawyers. The attorney

came in and complained he should have been notified if appellant was to be brought into court and also told the officer he shouldn't have questioned appellant. Appellant's case was called. He was charged with first degree murder, pleaded not guilty. Up until his appearance in city court on Thursday no charge had been filed against appellant nor any warrant served on him. He had not been advised of his right to counsel, to remain silent, to have an opportunity to consult with his parents or other friendly adults, to be brought before a magistrate without delay, all of which were here flagrantly violated by the police.

On April 24, 1963, the indictment on which appellant was tried was returned. Said indictment reads as follows:

"The Grand Jurors of the St. Joseph Circuit Court in and for St. Joseph County, State of Indiana, for the February Term, 1963, A.D. upon their oath do present:

That on or about the 15th day of April, 1963, A.D., at and in the County of St. Joseph, State of Indiana, one ROBERT JOHN DOWLUT did then and there unlawfully, feloniously, purposely and with premeditated malice, kill and murder one Anna Marie Yocum, by then and there unlawfully, deliberately, feloniously, voluntarily, purposely and with premeditated malice, shooting at and against the said Anna Marie Yocum, who was then and there at 917 West Washington Avenue in the City of South Bend, County and State aforesaid, with a certain deadly weapon, to-wit: a British Webley .45 Caliber revolver, which was then and there loaded with gunpowder and bullets, and thereby inflicted a mortal wound upon the said Anna Marie Yocum, of which mortal wound the said Anna Marie Yocum then and there died, contrary to the form of Statute in such cases made and provided and against the peace and dignity of the State of Indiana."

Upon the return of the above indictment a warrant for the arrest of appellant was issued and served upon appellant.

Appellant indicated he desired to file a Motion to Suppress Evidence. The court fixed September 21, 1964, at 9:30 a.m. as the time for filing and hearing thereon; and, the cause being at issue, the court set the same for trial, by jury,

Tuesday, October 13, 1964, at 9:30 a.m. Thereafter, appellant specifically waived the right to a public hearing on the above motion and requested that the hearing thereon be held in private. The cause was submitted to the court for hearing. Evidence was heard, and during the hearing appellant filed his motion to produce written evidence relative to a search warrant alleged to have been issued in St. Joseph County, Indiana, for the home of Donald and Olga Dowlut, which search warrant, among other things, requested the officer to search for an alleged gun. The court heard the evidence thereon and overruled appellant's motion. Thereafter, during the course of the hearing, the appellant again filed a written motion to require the State of Indiana to produce two handwritten statements alleged to have been written by appellant, one to his father, Donald Dowlut, and one to Cammy Swift. The court overruled this motion.

Thereafter on the 30th day of September, 1964, the trial court filed its written opinion, and judgment on the Motion to Suppress. A portion thereof, considered to be essential in this appeal, reads as follows, to-wit:

"The defendant has filed herein his motion to suppress evidence, seeking to suppress before trial:
1. All written or oral admissions, confessions, or writings made or alleged to have been made by the defendant.
2. A Webley revolver, together with ballistics tests, bullets, and empty shell casings, if any.
3. Paraffin tests results, if any...."

"ORDER
It is therefore ordered by the court that all confessions or admissions by the defendant made to the police from the time when he accompanied the police from his home at approximately ten P.M. on April 15, 1963, until he appeared before the City Court of the City of South Bend, Indiana, on April 18, 1963, be and they hereby are suppressed, and it is hereby ordered that no reference thereto be made during the course of the trial of this cause.
It is further ordered that in all other respects defendant's motion to suppress evidence is hereby denied."

During the progress of the trial the appellant, on October 27, 1964, filed another motion to suppress evidence alleging therein, inter alia, that all information relative to the Webley revolver, bullets, shells, casings and all records pertaining thereto, and all photographs relative thereto obtained between and including April 15 and April 18, 1963, should be suppressed because they were obtained in violation of his constitutional rights under Article I, Sections 13 and 14 of the Constitution of Indiana and in violation of Amendments V, VI and XIV of the Constitution of the United States and also in violation of § 9-1607 Burns'. Thereafter, on October 28, 1964, appellant filed another motion to suppress evidence seeking to suppress any and all statements of the writings of every kind and nature made by him to any law enforcement agency or officer or any other person while he was confined in the city jail on or after April 15, 1963, for the reason they were obtained in violation of the constitutional rights of the appellant.

The verdict of the jury reads as follows:

"We, the jury, find the defendant guilty of murder in the second degree and fix his punishment at imprisonment in the Indiana State Prison during his life."

Appellant's Motion for a New Trial encompasses some twenty-six (26) pages of record and contains twenty-five main grounds, some of which are broken down into subsections and cover the waterfront from objections and exceptions to rulings on pleadings, sustaining and overruling motions, objections to questions, motions to strike the answers, motions to withdraw the submission from the jury and for mistrial, error on the part of the court in overruling the Plea in Abatement, in the overruling of the motion to quash, in refusing to permit defendant a hearing on Supplemental Plea in Abatement, in overruling that portion of the defendant's Motion to Suppress Evidence relative to the Webley revolver and related subjects. Let it suffice to say that the writer here-

of, after having read the transcript, as well as the briefs, is of the opinion counsel for appellant left out of their motion for new trial no available ground.

Appellant's Assignment of Errors reads as follows:

"The Appellant says that there is manifest error in the judgment and proceedings in this cause in the trial court, to this, to-wit:

1. The court erred in overruling appellant's Plea in Abatement.

2. The court erred in denying Appellant's Motion to Suppress Evidence.

3. The court erred in overruling Appellant's Motion for New Trial."

In view of the determination we are compelled to make in this case we deem it unnecessary to discuss any of the issues raised by appellant other than those concerning the trial court's ruling on appellant's motion to suppress evidence. The court properly sustained the motion in so far as it concerned the induced confession. But the court erroneously denied that portion of the motion which sought to suppress all information and testimony relating to the gun, bullets and paraffin tests. The record clearly shows that all of the evidence appellant sought to have suppressed was obtained as a result of an unlawful incarceration. Since the confession was suppressed because of the unlawful methods used to obtain it, the evidence which is inextricably bound to such confession should also have been suppressed as the "poisoned fruit" thereof. The "poisoned fruit" could have been admitted into evidence only if it was shown that it was discovered by some means independent of the illegal confessions. *Watts* v. *State* (1950), 229 Ind. 80, 95 N. E. 2d 570.

The record is void of any independent evidence; therefore, the trial court's repeated refusal to suppress the gun, bullets and paraffin tests constituted reversible error.

Judgment is reversed and the cause is remanded with instructions to grant appellant's Motion for a New Trial.

Hunter and Mote, JJ. concur; Lewis, C. J. concurs in result; Arterburn, J. dissents.

NOTE.—Reported in 235 N. E. 2d 173.